BRUCE A. JOHNSON[1] vs. CITY OF BOSTON.

Suffolk.   February 6, 1986. — April 7, 1986.

Present: KASS, KAPLAN, & FINE, JJ.

*Negligence,* Glass door, School. *Evidence,* Demonstration, Safety standards.

In a negligence action, the evidence with respect to the development of safety
standards prescribing the use of reinforced glass in public buildings
indicating that, at the time of the plaintiff's injury in 1979, the glazing
of an interior door in a school building with ordinary window glass fell
below a well-known acceptable norm, was sufficient to present a question
for the jury whether in the circumstances it was unreasonable for a city,
acting through its school department, not to have replaced the annealed
glass in the swinging door to a high school auditorium with reinforced
glass. [25-29]

CIVIL ACTION commenced in the Superior Court Department
on February 23, 1981.

The case was tried before *Roger J. Donahue,* J.

*Lynn Thomas Johnson,* Assistant Corporation Counsel, for
the defendant.

*Charles K. Mone* for the plaintiff.

KASS, J. Johnson's theory of liability against the city, upon
which he obtained a jury verdict of $58,000,[2] is that the school
department was negligent in failing to glaze an interior door
in a school with reinforced glass. He had suffered a serious
injury when he put his left hand through a pane of ordinary
window glass. The city urges that the plaintiff had established
no duty on the city's part to install safety glass in the door in
question and that the trial judge, therefore, erred in denying a
motion for judgment notwithstanding the verdict.

---

[1] The action was filed by Bruce A. Johnson's father, as Bruce was a
minor at the time. He has since attained legal age.

[2] The jury found the plaintiff had been 20% negligent and the judgment
on the verdict, therefore, was $46,800.

The evidence, considered most favorably to the plaintiff, *O'Shaughnessy* v. *Besse,* 7 Mass. App. Ct. 727, 728-729 (1979), permitted the jury to find the following facts: There was to be a music class at which the teacher had promised to play the favorite records of students on a first come, first serve basis. That stimulated a race to be inside the auditorium to capture the teacher's attention. At the sound of a bell which signalled the end of his English class, Johnson ran to his music class, clutching a record and books in his right hand. He pushed at the swinging entrance doors to the auditorium and, in so doing, put his hand through one of the 28″ x 28″ glass panels with which each of the doors in the pair was glazed. The glass shattered and Johnson sustained lacerations of tendons in the index and middle fingers of his left hand, and a cut of the nerves in his index finger. After three surgical procedures, Johnson was left with significant weakness in grasp, impaired manipulative ability, diminished sensory acuity in the index finger, and discomfort. There was no promise of improvement.

Since the early 1960's it had been thought by safety councils, door manufacturers, and building officials that the use of annealed glass[3] in doors involved an avoidable risk of injury. Laminated glass, wired glass, or tempered glass would afford relative safety. It was also possible to achieve a significant diminution in risk by putting hardware cloth or mylar film over annealed glass. In recognition of the added measure of safety which could be achieved, it was after 1971 the policy of the school department to replace broken panes in places like the auditorium doors with wired glass or an acrylic panel.

In support of its stance that it had no duty to install safety glass in the door in question, the city relies on cases in which persons sustained injuries from standard building components and in which the court denied liability. Although the plaintiffs in those cases had managed a bare showing that the components might have been made more accident proof, the court decided that if there was no evidence that the components, as used,

---

[3] There was testimony that annealed glass, in the process of manufacture, is cooled from a molten state to room temperature at a slow, controlled rate, so that at room temperature the material is less brittle and it can be cut, ground, or drilled.

fell below a well known acceptable norm, the plaintiffs ought not recover. So, for example, in *Sterns* v. *Highland Hotel Co.*, 307 Mass. 90 (1940), the plaintiff alleged a badly designed entrance through a revolving door. There was no evidence, however, of a widely used alternative to the design and placement of the door. There was a similar lack of alternative in *Smith* v. *Johnson,* 219 Mass. 142 (1914), in which injury occurred from impact with a swinging door. *Rosenberg* v. *Hartman,* 313 Mass. 54 (1943), *Valunas* v. *J. J. Newberry Co.,* 336 Mass. 305 (1957), and *Soares* v. *Lakeville Baseball Camp, Inc.,* 369 Mass. 974 (1975), all had to do with plaintiffs who walked or fell through the glass of window or doors, but the claimants' cases foundered for lack of proof that the use of ordinary glass panels in each particular situation posed an unreasonable risk of injury. See also *Buzzell* v. *R. H. White Co.,* 220 Mass. 129, 130-131 (1915) (revolving door that spun too fast), and *Callaghan* v. *R. H. White Co.,* 303 Mass. 413, 416-417 (1939) (customer struck by a swinging door to a toilet compartment), in which it was conceded that governors and door checks were available on the market but the state of the evidence was that their use was uncommon.

The city also construes in its favor, and introduced into the case, a statute which requires all installations of glazing material in the entrance doors of public buildings, made after January 1, 1973, to be of safety glazing material (as defined in the statute). See G. L. c. 143, §§ 3T, 3U, and 3V, inserted by St. 1971, c. 837, § 1, as amended by St. 1972, c. 131.[4] Section 3V imposes criminal penalties for noncompliance. The glass panel in question had been installed before 1973. If, the city reasons somewhat disingenuously, it did not violate the penal statute, how can it be seen to have acted negligently? A base line for what constitutes criminal conduct does not, however, establish a base line for what is reasonable civil conduct.

---

[4] The statute is not self-defining as to what constitutes an entrance door. Under the State Building Code, the access doors to a place of assembly would require safety glazing. See 780 Code Mass. Regs. §§ 201.0, 610.0 and 857.5.6.1(1) (1980).

To the contrary, the safety glass statute is evidence that the use of safety glass, by 1971, was widely regarded as prudent. See *Rice* v. *James Hanrahan & Sons,* 20 Mass. App. Ct. 701, 707-708 (1985), and cases cited, for the proposition that violation of a safety regulation is evidence of negligence. In the case at bar, of course, the statute was not violated because it governed only future installations. Once put in evidence by the defendant, however, it permitted the jury to infer what was sound practice in glazing entrance doors in public buildings.

More to the point, there was other evidence, previously adverted to, from which the jury could infer that safety glazing was widely used in installations of the kind here at issue. It had been the policy of the school department since 1971 to replace broken panes in doors with safety glass or acrylic glazing. Johnson's accident occurred in 1979. An expert testified about industry efforts in the 1960's and 1970's to disseminate information about the hazards attendant on ordinary annealed glass panels in doors and the capacity of safety glass to reduce those hazards. He conducted tests before the jury which demonstrated the comparative capability to withstand impacts of ordinary annealed glass, laminated glass, wire glass, and tempered glass.

On such a record we are persuaded that resolving the question whether, in the circumstances, the defendant had taken reasonable and appropriate steps to prevent injury lay within the province of the jury. See *Upham* v. *Chateau de Ville Dinner Theatre, Inc.,* 380 Mass. 350, 353-355 (1980). As the court observed in that case, the category of settings in which the fact finder may consider the reasonableness of a landowner's conduct has been expanded by the decisions of recent years. *Id.* at 353. In products liability cases, evidence as to a standard of design which has developed in an industry has been considered as appropriate for consideration of the jury. See *Back* v. *Wickes Corp.,* 375 Mass. 633, 641 (1978) (design of a motor home); *Everett* v. *Bucky Warren, Inc.,* 376 Mass. 280, 288 (1978) (design of hockey helmets). Cf. *Uloth* v. *City Tank Corp.,* 376 Mass. 874, 881 (1978). We think of no reason why the same principle should not apply to the maintenance

of real estate. We are not unmindful of the financial burdens of public school systems, and this decision should not be read as imposing a standard of perfection. Here the plaintiff presented evidence that there existed a recognizable hazard; that the hazard existed in a setting where the hazard was likely to have consequences (a swinging door to a place of assembly used by teenagers who were likely to be high spirited, distracted, or both); and that relatively simple and inexpensive means existed to reduce the hazard. We hold only that it was proper for the jury to decide whether in the circumstances it was unreasonable for the defendant not to have taken remedial action.

Cases from other jurisdictions which specifically involve shattered glass are instructive. In *Trimarco* v. *Klein,* 56 N.Y. 2d 98 (1982), the plaintiff was hurt when, in 1976, a glass tub enclosure door in his apartment fractured. The court held that "it was . . . for the jury to decide whether, . . . when the accident occurred, the modest cost and ready availability of safety glass and the dynamics of the growing custom to use it for shower enclosures had transformed what once may have been considered a reasonably safe part of the apartment into one which, in the light of later developments, no longer could be so regarded." *Id.* at 107.

Closer to the case at bar, because rambunctious conduct by children was there, as here, the expectable norm, is *Wheeler* v. *Jones,* 19 Utah 2d 392 (1967), in which the plaintiff broke through a glass entrance door to a swimming pool. The court said, "The issue was not . . . whether there was negligence in the original construction . . . . The issue was whether the defendants should have realized that a dangerous type glass should have been replaced with a safety type when small children were constantly at play around the door." *Id.* at 396. See also *Wilkinson* v. *Hartford Acc. & Indemn. Co.,* 411 So. 2d 22 (La. 1982), in which the court held a school board negligent for maintaining a plain glass door to a gymnasium.[5] Contrast

---

[5] Louisiana had enacted a statute, similar to the Massachusetts one, requiring the use of safety glazing materials on pain of criminal sanctions, to

*Leach* v. *School Dist. No. 322,* 197 Wash. 384 (1938), in which, however, the court, at 388, arrived at the conclusion that in 1937, when the accident occurred, shatter-proof glass was not widely in use.

We touch briefly on other points raised by the defendant. There was no objection to the glass fracture demonstrations made by the plaintiff's expert, and so a point as to admissibility of the demonstrations is lost on appeal. *Freyermuth* v. *Lutfy,* 376 Mass. 612, 616 (1978). In any event the admissibility of a demonstration in evidence, which involves balancing its helpfulness to the jury against the possibility of unfair prejudice, is a question which rests in the sound discretion of the judge. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 592-593 (1956). *Griffin* v. *General Motors Corp.,* 380 Mass. 362, 365-366 (1980). *Bechtel* v. *Paul Clark, Inc.,* 10 Mass. App. Ct. 685, 688 (1980). Other objections to aspects of the expert's evidence were based on the ground that, as the city had no duty to replace the glass in the door, evidence of its fragility was irrelevant. That ground was manifestly unsound. The grounds now urged, scarcely more compelling, were not called to the attention of the trial judge, and we do not consider them.

Taking into account all the evidence in its aspect most favorable to the plaintiff, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the judge correctly determined that the jury reasonably could return a verdict for the plaintiff. See *D'Annolfo* v. *Stoneham Housing Authy.,* 375 Mass. 650, 657 (1978); *Rubel* v. *Hayden, Harding & Buchanan, Inc.,* 15 Mass. App. Ct. 252, 254 (1983).

*Judgment affirmed.*

apply to buildings constructed after January 1, 1973. See La. Rev. Stat. 40: 1711-1715. A concurring opinion of Lemmon, J., observed that "the statute may be applied by analogy as one of the factors to be considered in determining the School Board's civil duty to replace the plate glass in dangerous areas of existing buildings." *Id.* at 25 n.1.