Cheryl Daniels, Individually and as Mother   :
and Next Friend of Anthony Daniels, a minor

v.                          :

Zachery Fluette et al.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Cheryl Daniels, Individually and as Mother    :
and Next Friend of Anthony Daniels, a minor

                  v.                 :

     Zachery Fluette et al.            :

     Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** Cheryl Daniels (plaintiff), individually and as mother and next friend of Anthony Daniels, appeals from a Superior Court judgment granting the defendant Bishop Hendricken High School's (school) motion for summary judgment.[1] The plaintiff argues that the hearing justice erred in holding that the school did not breach its duty to provide a safe learning environment. Specifically, she contends that the school failed to supervise its students and failed to protect its students by using safety glass in a bathroom window. This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or

---

[1] The Superior Court also granted summary judgment in favor of the school's principal, Brother Thomas R. Leto. However, Brother Leto was sued only in his official capacity, and plaintiff offered no objection to the granting of summary judgment in his favor. Accordingly, he is not a party to this appeal. Zachery Fluette also is no longer a party, having settled with plaintiff prior to the hearing of this appeal.

argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Procedural History

The facts underlying this case are not in dispute.[2]  On January 12, 2006, after classes had concluded for the day at Bishop Hendricken High School, Anthony Daniels, a member of the school's hockey team, remained on the premises to work out in the weight room.  After leaving the weight room, and while waiting for his mother to pick him up, Daniels spotted his friend Oliver Goudiably.  Daniels went over to Goudiably's locker, grabbed his book bag, and ran to the boys' bathroom.  Daniels entered a stall and pretended he was going to flush Goudiably's bag down the toilet, announcing that it was going into the drain.  Goudiably gave chase and brought in reinforcements, arriving in the boys' bathroom accompanied by Zachery Fluette.  Fluette kicked the stall door, which hit Daniels in the head.  Fluette then pushed him, causing Daniels to stumble toward a window.  Daniels instinctively put up his hands, shattering the glass and causing a laceration to his wrist.

On October 31, 2007, plaintiff filed suit against Fluette, the school, and its agents, alleging negligence.  In 2011, the Superior Court granted summary judgment in favor of the school and Brother Leto.  Final judgment was entered and plaintiff timely appealed.

## II

## Standard of Review

This Court will review the grant of a motion for summary judgment <u>de novo</u>, "employing the same standards and rules used by the hearing justice." <u>Great American E & S Insurance Co.</u>

---

[2] Because the underlying facts are undisputed, we glean them from the hearing justice's bench decision in this case.

v. End Zone Pub & Grill of Narragansett, Inc., 45 A.3d 571, 574 (R.I. 2012) (quoting Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 258 (R.I. 2011)). "We will affirm a lower court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id. (quoting Generation Realty, LLC, 21 A.3d at 258). "Moreover, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Id. (quoting Narragansett Improvement Co. v. Wheeler, 21 A.3d 430, 438 (R.I. 2011)).

### III

### Discussion

On appeal, plaintiff argues that the hearing justice erred in granting summary judgment in favor of defendant because the school had a duty to supervise its students, which plaintiff contends it breached by neither discouraging nor detecting the horseplay in the boys' bathroom. The plaintiff asserts that the level of supervision required is a question of fact that should have been determined by a jury. Further, plaintiff argues that the school had a duty to protect its students from harm and that, because the horseplay in the boys' bathroom was reasonably foreseeable, the school had a duty to install safety glass in the boys' bathroom window.

The defendant argues that, because the incident occurred after school and not at the location of any after-school activity, the school did not have a duty to supervise Daniels. Additionally, defendant asserts that even assuming it had a duty to supervise Daniels, schools cannot be held to be insurers of their students' safety and any liability should be limited to injuries proximately caused by a lack of supervision. The school points out that there had been

no complaints about Fluette's conduct and that, therefore, there was no way to foresee this incident. Further, the school notes that Daniels's conduct in initiating the prank was the direct cause of his injury. Finally, defendant argues that because safety glass was not required by the building code in effect at the time the school was constructed and indeed is not required by the present building code, the fact that the glass in the bathroom window was not safety glass is not evidence of a breach of duty. Accordingly, defendant asserts that the hearing justice was correct in granting its motion for summary judgment.

## A

### Duty to Supervise

"It is well settled that to prevail on a claim of negligence 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" Habershaw v. Michaels Stores, Inc., 42 A.3d 1273, 1276 (R.I. 2012) (quoting Holley v. Argonaut Holdings, Inc., 968 A.2d 271, 274 (R.I. 2009)). The plaintiff argues that defendant's duty is established both by G.L. 1956 § 16-2-17 and by the school's handbook.

Section 16-2-17(a) states that students have "a right to attend * * * a school which is safe and secure, and which is conducive to learning, and which is free from the threat, actual or implied, of physical harm by a disruptive student." However, we consider the argument based on § 16-2-17 to be meritless—since that statute clearly does not relate to non-public schools such as Bishop Hendricken High School.

The Bishop Hendricken Student Handbook provides that:

> "Designated supervisors of extracurricular activities are on duty for necessary times before, during, and after their respective activities.

"Parents can expect the official supervision of students during the school day to begin at 7:15 AM until 4:30 PM. The time of official supervision of students during extracurricular activities begins at the moment when the first student arrives for the activity until such time as all students have departed. After school, students are limited to the cafeteria and the foyer area * * *. Outside these times of official supervision, students who are on campus must observe policies, regulations and procedures governing our school community.

"Parents should be aware that the school will not be responsible for students on campus outside times of official supervision."

Daniels stated that he remained on campus to work out, as part of the school's hockey program, and that, after working out, was on his way to the cafeteria when he ran into Goudiably. The evidence does not indicate whether the workout was a formal extracurricular activity as opposed to an individual pursuit tangentially linked to the hockey team. The questions of whether Daniels was participating in an extracurricular activity, and whether that activity had ended are questions of material fact. However, the hearing justice assumed without deciding that a duty existed. This is consistent with the summary judgment standard of viewing all facts in the light most favorable to the non-moving party, here, plaintiff. See Great American E & S Insurance Co., 45 A.3d at 574. For purposes of our review, this Court will likewise assume without deciding that a duty existed.

Determining whether the school breached its duty by failing to adequately supervise the boys at the time of the incident requires us to determine the extent of supervision necessary in a high school setting. This Court addressed this issue in Medeiros v. Sitrin, 984 A.2d 620, 626-27 (R.I. 2009).[3] In that case, a high school student was arriving late to class when he was injured by two other students in an altercation that took place in a lab area just outside of the classroom. Id.

---

[3] As in the instant case, in Medeiros v. Sitrin, 984 A.2d 620, 626 (R.I. 2009), this Court stated, "for the purposes of this appeal, we will assume, without deciding, that [the defendant] had a duty to supervise [the students] * * *."

- 5 -

at 623. The injured student filed suit against the teacher and the city, alleging that the teacher failed to adequately supervise "foreseeably late students who would have to travel through the lab to reach the classroom." Id. at 624. However, because the plaintiff failed to identify "a specific act or omission * * * that indicated a deviation from the proper standard of care," we held that the defendants did not breach their supervisory duties. Id. at 626 (quoting Morales v. Town of Johnston, 895 A.2d 721, 732 (R.I. 2006)). We noted that "even the case law from other jurisdictions * * * cite[d] to support the proposed standard of care for teachers in supervising their students does not contemplate that a teacher's physical absence from a student is necessarily a breach of the duty to supervise." Id. at 627.

Here, plaintiff offers no specific act or omission by defendant other than the fact that no teacher or administrator was present to discourage or detect the horseplay. Absent a specific act or omission, we are reluctant to impose upon schools a standard that would require them to post monitors at each bathroom during after-school hours. We note that other jurisdictions have held that "schools are not the insurers of the safety of their students, 'perfection in supervision' is not required, and schools are not liable for 'every thoughtless or careless act by which one pupil may injure another.'" Armellino v. Thomase, 899 N.Y.S.2d 339, 340 (N.Y. App. Div. 2010) (quoting Lawes v. Board of Education of the City of New York, 213 N.E.2d 667, 668-69 (N.Y. 1965)).

In determining the degree of supervision required, other jurisdictions have focused on the foreseeability of the injury. In Miller v. Yoshimoto, 536 P.2d 1195, 1198, 1200-01 (Haw. 1975), the Hawaii Supreme Court held that a school was not liable for injuries sustained by a student who was hit by rocks thrown by another child in an area between two campus buildings. The incident occurred just after the school day ended, as the children were walking home. Id. at 1196, 1198. There was no supervision of that area of the campus at the time of the incident. Id.

at 1200.  The court held that the absence of "personnel assigned specifically to supervise the area in which [the student] was injured" was not sufficient to show a breach of the duty of reasonable supervision. Id.  Rather, the Hawaii court looked to the foreseeability of the injury:

> "The duty of reasonable supervision does not require the [school] to provide personnel to supervise every portion of the school buildings and campus area.  However, if certain specific areas are known to the [school] as dangerous, or the [school] should have known that a specific area is dangerous, or the [school] knew or should have known that certain students would or may conduct themselves in a manner dangerous to the welfare of others, [the] duty of reasonable supervision would require specific supervision of those situations." Id.

More recently, a New York court employed a similar standard, holding that, in order to find that a school breached its duty to supervise, a plaintiff must show that the acts of the defendant students were foreseeable: "[T]o find that a school breached the duty to provide adequate supervision 'in the context of injuries caused by the acts of fellow students,' it must be demonstrated * * * 'that the third-party acts could reasonably have been anticipated.'" Rose v. Onteora Central School District, 861 N.Y.S.2d 442, 443 (N.Y. App. Div. 2008) (quoting Mirand v. City of New York, 637 N.E.2d 263, 266 (N.Y. 1994)).  In Rose, 861 N.Y.S.2d at 443, the plaintiff student was injured when a fellow student, as a prank, closed a classroom door on his hand.  The plaintiff student sued the school district, alleging negligent supervision. Id.  In holding that the school was not liable, the court noted that the incident was not reasonably foreseeable because there was no history of disciplinary problems in the classroom where the incident took place, nor was there a history of disciplinary problems among the students involved. Id. at 444.  The court noted that "constant supervision of students at the high school level is not required" and concluded that the incident "was the result of a spontaneous and

careless prank among high school friends such that [the] defendant could not have reasonably anticipated its occurrence or prevented it." Id. at 443, 444.

We agree that, rather than hold schools to the standard of being insurers of their students' safety, a plaintiff seeking to hold a school liable for injuries resulting from the acts of another student must show that such acts could have been reasonably foreseen by the school. Here, plaintiff offered no evidence that there was a history of "horseplay" in the area where the incident took place.[4] Nor was there any evidence offered that complaints had been made about Fluette's conduct. Absent even the allegation of such a history, it was not error for the hearing justice to grant summary judgment for defendant, as plaintiff has not proven the existence of a disputed issue of material fact.

**B**

**Safety Glass**

Alternatively, plaintiff argues that the school had a duty to protect its students and that its failure to install safety glass in the boys' bathroom window was a breach of that duty. Further, plaintiff asserts that the school's reliance on its compliance with past and present building codes provides no defense to its negligence. In support of this argument, plaintiff offers several cases in which courts have held that failure to install safety glass in heavily used doors may be the basis of liability, notwithstanding the fact that safety glass was not required by the building codes. See Johnson v. City of Boston, 490 N.E.2d 1204, 1205, 1206 (Mass. App. Ct. 1986) (holding that the plaintiff had proven that a swinging door to the auditorium, used by students who were likely to be "high spirited" or "distracted," was a "recognizable hazard," despite the fact that the building code did not require the replacement of the door panel with safety glass);

---

[4] Only if there were some evidence of such a history could the issue be beyond summary judgment and subject to a determination by the trier of fact.

Trimarco v. Klein, 436 N.E.2d 502, 503, 506 (N.Y. 1982) (holding that the evidence of custom and usage of installing shatterproof glass in shower doors was sufficient to establish a question of fact as to whether reasonable prudence required a landlord to replace the existing plain glass door); Wheeler v. Jones, 431 P.2d 985, 988, 989 (Utah 1967) (affirming a jury verdict against a defendant who failed to install safety glass in a sliding door to a pool area used exclusively by children).

The plaintiff's reliance on these "door cases" is misplaced. In each of these cases, the hazard was quite foreseeable. In Johnson, 490 N.E.2d at 1205, 1206, the swinging door was located in a high traffic location, and the pane of glass was situated such that the plaintiff, in pushing the door, inadvertently put his hand through the glass. The glass at issue in Trimarco, 436 N.E.2d at 503, 504, was in a bathtub enclosure, long after the danger posed by using non-shatterproof glass in bath enclosures was recognized. Similarly, the sliding glass door in Wheeler, 431 P.2d at 988, was used by children as the entrance to a swimming pool, and the hazard posed by the glass was readily apparent. By contrast, in this case there was no evidence submitted that the window in the boys' bathroom received heavy use or that it was situated in such a way as to pose a particular danger. On the contrary, defendants offered an affidavit that stated that the glass in that window had not been replaced since the school was built in 1959. Unlike the "door cases," here plaintiff presented no evidence at all that would tend to show that it was foreseeable that a student could be injured as a result of the school's failure to install safety glass.

While compliance with building codes alone may not provide a complete defense, the school had no reason to foresee that the window might pose a danger, and imposing liability here

would be tantamount to making the school an insurer of its students. Accordingly, we find no error with the hearing justice's grant of summary judgment in favor of the defendants.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record of this case shall be returned to the Superior Court.



**TITLE OF CASE:**    Cheryl Daniels, Individually and as Mother and Next Friend of Anthony Daniels, a minor v. Zachery Fluette et al.

**CASE NO:**    No. 2012-53-Appeal.
(PC 07-5827)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    April 12, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian Van Couyghen

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Carl P. DeLuca, Esq.

For Defendant:  Faith A. LaSalle, Esq.