December 13, 2017

**Supreme Court**

Lehigh Cement Co.            :            No. 2016-118-Appeal.

                                         (PC 12-6580)

v.               :

David Quinn, in his capacity as Tax Assessor   :
of the City of Providence, Rhode Island.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| Lehigh Cement Co. | : | No. 2016-118-Appeal. |
| | | (PC 12-6580) |
| v. | : | |
| David Quinn, in his capacity as Tax Assessor | : | |
| of the City of Providence, Rhode Island. | | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** It is said that the only things of which we can be certain are death and taxes,[1] neither one of which is embraced with great enthusiasm. But whereas the former is an immutable law of nature, the latter is most decidedly a human creation. Although most persons accept the necessity of paying taxes, no one relishes paying more than his or her fair share, much less paying taxes for which he or she has been erroneously assessed. Such is the situation in which the plaintiff, Lehigh Cement Co. (Lehigh or plaintiff) finds itself. Lehigh filed suit against the City of Providence (the city), seeking to recover approximately $500,000 in real-estate taxes billed and collected by the city from 2006 to 2009. The matter presently before us is Lehigh's appeal from a Superior Court judgment, granting the city's motion for summary judgment. This case came before the Supreme Court, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing

---

[1] The reference of death and taxes is generally attributed to Benjamin Franklin, who wrote in a 1789 letter to Jean-Baptiste Leroy: "Our new Constitution is now established, and has an appearance that promises permanency, but in this world nothing can be said to be certain, except death and taxes." In 1716, however, Christopher Bullock wrote in his play, The Cobbler of Preston, "'Tis impossible to be sure of any thing but Death and Taxes."

the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment.

## I

## Facts and Procedural History

On December 21, 2012, Lehigh filed a civil action for money damages against the city for having imposed an excessive and illegal tax. The complaint set forth the following facts.[2]

In 2002, Lehigh leased 3.65 acres of land at the Port of Providence from ProvPort, a non-profit, tax-exempt, public-private partnership that owns the Port. The city, however, taxed Lehigh on 16.8 acres of land rather than the 3.65 acres it was actually leasing. The error was not apparent from the tax bills and, consequently, Lehigh paid the bills in full. In total, Lehigh paid nearly $500,000 in taxes attributable to property it neither owned nor leased. When it became aware of the error in 2010, Lehigh brought it to the tax assessor's attention, and the city corrected its records going forward. Lehigh met with the tax assessor on December 15, 2010, at which time the tax assessor represented that he would review the matter and, if an error had occurred, he would rectify it by giving Lehigh tax credits it could use against future bills. Subsequently, Lehigh engaged in additional communications with the city in the course of which the city assured Lehigh that it was aware of the problem and was working on it.[3]

Lehigh's complaint sought the following relief: (count 1) that pursuant to G.L. 1956 § 44-5-23, the assessor must correct the erroneous assessment for tax years 2006-2009 by issuing both corrected assessments to Lehigh and an appropriate refund; (count 2) that pursuant to the fair-

---

[2] As Lehigh appeals from the granting of the city's motion for summary judgment, we view the facts in the light most favorable to Lehigh.

[3] Lehigh's memorandum in support of its objection to the city's motion for summary judgment included the affidavits of a licensed real-estate appraiser and Lehigh's land manager. Both affiants swore to different instances of assurances made by the city that it was working on Lehigh's assessment issue and that a credit might be issued in lieu of a refund.

distribution clause under article 1, section 2 of the Rhode Island Constitution, Lehigh is entitled to a refund of the taxes paid in excess because "[the city] failed to fairly distribute the burden of its property tax on Lehigh"; and (count 3) that pursuant to § 44-5-27, Lehigh is entitled to the return of the illegal tax imposed during 2006-2009.

On July 5, 2013, the city filed an amended answer to the complaint. Thereafter, the city filed a motion for summary judgment, to which Lehigh objected. A hearing was held on the city's motion for summary judgment on January 7, 2016; and on January 14, 2016, the hearing justice issued a written decision, granting the city's motion.

Regarding Lehigh's claim under § 44-5-27, the hearing justice found that Lehigh "offer[ed] no support for its conclusory allegation that it was assessed an illegal tax." The hearing justice also determined that Lehigh's § 44-5-27 claim was untimely regardless of when Lehigh discovered the error; and he declined to apply the doctrine of equitable tolling because "Lehigh ha[d] not provided evidence that circumstances beyond its control prevented it from filing a complaint." Concerning Lehigh's claim under § 44-5-23, the hearing justice declared that "it does not appear that § 44-5-23 creates a private cause of action" nor does it permit taxpayers "to collect a refund for the taxes it paid in excess of the amount it owed." Finally, in regard to Lehigh's claim under the fair-distribution clause, the hearing justice determined that he "need not address Lehigh's argument" because "Lehigh has not alleged any facts—other than a bare assertion—sufficient to support its argument that it was assessed an illegal tax * * *."

On February 4, 2016, the hearing justice entered an order and judgment in favor of the city, from which Lehigh timely appealed.

## II

## Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, 'employing the same standards and rules used by the hearing justice.'" *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016) (quoting *Daniels v. Fluette*, 64 A.3d 302, 304 (R.I. 2013)). "We will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Daniels*, 64 A.3d at 304). Furthermore, "the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Daniels*, 64 A.3d at 304). "[S]ummary judgment should enter 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" *Id.* (quoting *Lavoie v. North East Knitting, Inc.*, 918 A.2d 225, 228 (R.I. 2007)). "It is a fundamental principle that [s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 176 (R.I. 2016) (quoting *The Law Firm of Thomas A. Tarro III v. Checrallah*, 60 A.3d 598, 601 (R.I. 2013)).

## III

## Discussion

Lehigh argues that "[t]he [c]ity was not entitled to summary judgment on any of the three causes of action asserted by Lehigh" and that, therefore, "[t]he decision below should be reversed." Lehigh specifically argues that the hearing justice erred in: (1) dismissing Lehigh's

claim under § 44-5-23, (2) granting summary judgment on Lehigh's claim under the fair-distribution clause of the Rhode Island Constitution, and (3) granting summary judgment on Lehigh's claims under § 44-5-27.

**A**

**Section 44-5-23**

Lehigh argues that the hearing justice erred in granting summary judgment on its claim under § 44-5-23. Its complaint alleged:

> "The [c]ity erroneously assessed Lehigh during tax years 2006-09. In particular, the city erroneously billed Lehigh as if it were leasing 16.8 acres of land from ProvPort, when in fact it only leased 3.65 acres. Pursuant to R.I. Gen. Laws § 44-5-23, the Assessor must correct these errors by issuing corrected assessments to Lehigh and issuing an appropriate refund."

Lehigh asserts that § 44-5-23 permits a private right of action entitling it to relief "*either* in the form of a refund *or* in the form of corrective adjustments to future tax bills." The city demurs, claiming that the only relief available to a taxpayer aggrieved by an assessment of taxes is the administrative process set forth in § 44-5-26.

The resolution of this question is a matter of statutory construction. "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996). This Court "presume[s] that the Legislature intended every word, sentence, or provision to serve some purpose and have some force and effect, * * * but [the Court] will not interpret a statute in a manner that would defeat the underlying purpose of the enactment." *Pier House Inn, Inc. v. 421 Corp., Inc.*, 812 A.2d 799, 804 (R.I. 2002). Therefore, when interpreting a legislative enactment, this Court must "determine and effectuate the Legislature's intent and to attribute to the enactment the meaning

most consistent with its policies or obvious purposes." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I. 1987).

Section 44-5-23 provides in pertinent part:

"If any real estate liable to taxation in any city or town has been omitted in the assessment of any year or years and has thereby escaped taxation, or if any tax has been erroneously or illegally assessed upon any real estate liable to taxation in any city or town in any year or years, and because of the erroneous or illegal assessment the tax cannot be collected, or if paid has been recovered, the assessor of taxes of the city or town in the next annual assessment of taxes after the omission or erroneous or illegal assessment is known to him or her shall assess or reassess, as the case may be, a tax or taxes against the person or persons who were the owner or owners of the real estate in the year or years, to the same amount to which the real estate ought to have been assessed in the year or years. The assessment is in addition to any assessment of taxes against the person or persons for the then current year, and shall be placed on a special tax roll and annexed to the general tax roll for the current year; provided, that the assessment or reassessment is made within six (6) years of the date of the assessment from which the real estate was omitted or in which it was erroneously or illegally assessed."

Under the plain reading of the statute, it is clear that it does not apply to the concerns raised by Lehigh. The taxes for which Lehigh seeks a "corrected assessment" and "appropriate refund" do not constitute taxes "omitted in the assessment of any year or years" and thereby escaped taxation for the purposes of § 44-5-23. Additionally, Lehigh alleges that the taxes were erroneously or illegally assessed. This latter category, however, is further qualified by language limiting the application of the statute to situations where "because of the erroneous or illegal assessment the tax cannot be collected, or if paid has been recovered[.]" *Id*. Here, the taxes at issue have in fact been paid but not recovered. Indeed, that is the very purpose of Lehigh's lawsuit. Further, the remedy provided in § 44-5-23 permits the assessor to reassess the real estate to "the same amount to which the real estate ought to have been assessed" in addition to any assessment "for the then current year." Thus, § 44-5-23 provides municipalities with a six-

year look-back period in which to assess or reassess real estate that may have escaped taxation. It does not provide relief to a taxpayer. Therefore, we affirm the judgement as to count 1.

**B**

**The Fair-Distribution Clause**

Lehigh argues that summary judgment on its claim under article 1, section 2 of the Rhode Island Constitution, the fair-distribution clause, was inappropriate. Count 2 of Lehigh's complaint alleged, "[d]uring the years 2006-09, the [c]ity did not distribute the burden of its property tax fairly among its residents" because it "taxed Lehigh on 13.15 acres of land that it neither owned nor leased, and it failed to tax whoever was responsible for paying the property tax on that 13.15 acres."

Article 1, section 2 of the Rhode Island Constitution provides, in relevant part:

> "All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."

As early as 1856, this Court recognized the precatory nature of this constitutional provision, explaining that the fair-distribution clause enunciated principles directed to the legislature rather than establishing limitations upon its powers. *See In re Dorrance Street*, 4 R.I. 230, 249 (1856). In *In re Dorrance Street*, Chief Justice Ames, writing for the Court observed:

> "We will not stop to notice the very general language and declaratory form of this clause; setting forth principles of legislation rather than rules of constitutional law—addressed rather to the general assembly by way of advice and direction, than to the courts, by way of enforcing restraint upon the law-making power. We do not mean to say that a law, purporting to impose a tax or burden of some sort upon the citizen, may not be in its distribution of the burden, both in design and effect, so outrageously subversive of all the rules of fairness, as not to come so far within the purview of this general clause, as to enable the court to save the citizen from oppression by declaring it to be void. But evidently a wide discretion with regard to the distribution of the burdens of

- 7 -

state amongst the citizens was intended to be reposed in the general assembly by the will of the people, as signified in this clause of the constitution. The form is 'Ought to be,' the word is 'fairly' distributed, not 'equally' even—unless equality be fair, which it is not always in any sense, and never is in some senses * * *." *In re Dorrance Sreet*, 4 R.I. at 249.

*See also Kalian v. Langton*, 96 R.I. 367, 372, 192 A.2d 12, 15 (1963) ("[T]he language employed by the people in art. I, § 2, was by way of advice and direction to the lawmaking power rather than to the courts by way of restraining such power.").

More recently, in *Picerne v. DiPrete*, 428 A.2d 1074, 1078 (R.I. 1981), this Court held that the trial justice ruled correctly in finding that a municipality's assessments were arbitrary and discriminatory and violative of the fair-distribution clause of the Rhode Island Constitution. This Court concluded that legally competent evidence existed in the record to support the trial justice's conclusions that the revaluations of the plaintiffs' properties were intentionally selective and patently discriminatory.

Here, although the erroneous or illegal assessment at issue is substantial ($500,000), Lehigh does not allege discriminatory or fraudulent intent. Nor can the assessments be said to be "so outrageously subversive as to offend notions of fairness." *See In re Dorrance Sreet*, 4 R.I. at 249. Indeed, the tax bills were apparently not so outrageous as to raise any red flags causing Lehigh to question them before 2010. Based upon our *de novo* review, we are of the opinion that Lehigh's claim under the Rhode Island Constitution is unavailing.

## C

### Section 44-5-27

Lehigh's final contention on appeal is that the hearing justice erred in granting summary judgment on its claim under § 44-5-27, which provides in its entirety:

"The remedy provided in § 44-5-26 is exclusive if the taxpayer owned or possessed any ratable estate at all, except that, in a proper case, the taxpayer may invoke the equity jurisdiction of the [S]uperior [C]ourt; provided, that the complaint is filed within three (3) months after the last day appointed for the payment, without penalty, of the tax, or the first installment of the tax, if it is payable in installments. A taxpayer alleging an illegal or void tax assessment against him or her is confined to the remedies provided by § 44-5-26, except that the taxpayer is not required to file an appeal with the local assessor."

"This Court frequently has emphasized that 'the taxing statutes provide the exclusive relief to any person aggrieved by any assessment of taxes against him by any city or town.'" *Narragansett Electric Co. v. Minardi*, 21 A.3d 274, 278 (R.I. 2011) (quoting *Murray v. Rockaway Boulevard Wrecking & Lumber Co.*, 108 R.I. 607, 609, 277 A.2d 922, 924 (1971)). Section 44-5-26(a) provides an administrative appeal process to "[a]ny person aggrieved on any ground whatsoever by any assessment of taxes against him or her * * *." Appeals are to the local office of tax assessment in the first instance; and then, if still aggrieved, the taxpayer may appeal to the local tax board of review. Section 44-5-27 provides that the remedy set forth in § 44-5-26 is exclusive "except that, in a proper case, the taxpayer may invoke the equity jurisdiction of the [S]uperior [C]ourt." This Court has also explained that "a taxpayer alleging an illegal tax may proceed directly to the Superior Court." *Narragansett Electric Co.*, 21 A.3d at 278.

The ability of a taxpayer to file a suit in equity directly in the Superior Court, however, is sharply circumscribed by a brief limitations period. A complaint must be filed "within three (3) months after the last day appointed for the payment, without penalty, of the tax, or the first installment of the tax, if it is payable in installments." Section 44-5-27. It is undisputed that Lehigh did not meet this deadline for any one of the years for which it is seeking a refund.

Lehigh seeks to slay this procedural Goliath by invoking the discovery rule and the doctrine of equitable tolling. "[T]he heart of the discovery rule is that the statute of limitations

- 9 -

does not begin to run until the plaintiff 'discovers, or with reasonable diligence should have discovered, the wrongful conduct of the [defendant].'" *Mills v. Toselli*, 819 A.2d 202, 205 (R.I. 2003) (quoting *Supreme Bakery, Inc. v. Bagley*, 742 A.2d 1202, 1204 (R.I. 2000)). Whether or not a plaintiff acts with reasonable diligence generally presents a factual inquiry not amenable to summary judgment.

We have serious concerns, however, about the applicability of the discovery rule in the circumstances of Lehigh's complaint, which seeks the return of an allegedly illegal tax. The General Assembly has carefully crafted chapter 5 of title 44, entitled "Levy and Assessment of Local Taxes," to provide for the financial support of Rhode Island's cities and towns. We have previously made clear "the importance that the assessment process plays in the fiscal operation of the various municipalities located in this state." *Northgate Associates v. Shorey*, 541 A.2d 1192, 1193 (R.I. 1988). Specifically, we have noted:

> "Real property taxation provides a significant source of municipal revenues, and departmental appropriations are necessarily dependent on the funds available. The share that each taxpayer must contribute to support and sustain municipal services varies with the assessment placed on his, her, or its property. Thus, both the taxpayer and the municipality have an obvious interest in the amount and accuracy of the individual assessments. The municipality has an additional concern that disputes relative to an assessment be resolved as expeditiously as possible so that the tax roll may be finalized and the tax rate established. This concern has been shared with the Legislature. When enacting § 44-5-27, the General Assembly emphasized that a taxpayer's complaint is to be filed in the Superior Court 'within three (3) months after the last day appointed for the payment' of such tax without penalty.
>
> "* * *
>
> "It is obvious that the Legislature, in enacting § 44-5-27, recognized the necessity for finality in assessment disputes when it stated that the taxpayer's complaint was to be filed within three months of the last day specified for payment without a penalty of such tax." *Id.*

Even assuming without deciding, however, that the discovery rule has vitality in the context of a suit filed under § 44-5-27, it is not sufficient to save Lehigh's claim. It is indisputable that Lehigh became aware of the erroneous assessment in 2010, yet did not file its complaint until 2012, well beyond the limitations period set forth in the statute. It seeks, therefore, to employ another equitable concept—the doctrine of equitable tolling—to breathe new life into its moribund claim.

This Court has observed that "equitable tolling is an exception to the general statute of limitations based upon principles of equity and fairness * * *." *Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289, 292 (R.I. 2002). In support of its argument, Lehigh relies upon *Rivera v. Employees' Retirement System of Rhode Island*, 70 A.3d 905 (R.I. 2013). There, a police officer missed the thirty-day statutory period for seeking judicial review of the denial of her application for accidental disability benefits, which period "beg[an] to run *the day after the notice [of the decision was] mailed.*" *Id.* at 911. After "bearing in mind all of the circumstances before us," we held that petitioner's appeal was timely pursuant to the doctrine of equitable tolling. We said:

> "Significantly, however, two explicit statements by the board (one on the record at the conclusion of the final full hearing and one contained within the notice of the final decision that was sent to petitioner and her attorney) provided incorrect information to the effect that the deadline for seeking judicial review was thirty days from the receipt of the notice of the final decision. It is noteworthy that [petitioner's] appeal was indeed filed within thirty days of her receipt of that notice of the final decision." *Rivera*, 70 A.3d at 913.

The representations upon which Lehigh claims it relied are readily distinguishable from the two "authoritative misstatements" underlying our opinion in *Rivera*, 70 A.3d at 913. In the case at bar, Lehigh presents two affidavits in support of its objection to the city's motion for

summary judgment. A licensed real-estate appraiser hired by Lehigh averred that he had met with the tax assessor and "discussed Lehigh receiving a go forward credit in lieu of a refund on the overbilling. [He] made several attempts with the [c]ity to follow up on this. Each time [he] was told that the [c]ity was working on the problem, or words to that effect."

The second affidavit was by the land manager for Lehigh. He stated that on December 15, 2010, he met with the tax assessor, who said that "once he confirmed that Lehigh had been taxed on land it wasn't leasing, he would correct the problem by giving Lehigh tax credits it could use against future tax bills." The land manager further swore that "in reliance on [the tax assessor's] representation, Lehigh did not immediately take legal action to recover its money, but instead assumed that the [c]ity would verify and correct the problem." He also states that representatives of Lehigh "made many attempts to ensure that the [c]ity was following through on [the tax assessor's] commitment to correct our problem" and reported that "when they were able to speak with someone, they were repeatedly told that the [c]ity was aware of Lehigh's tax problem and was working on it." The land manager provided four such instances: (1) in early 2011, a representative of Lehigh telephoned the recently-named acting tax assessor who indicated she "had been busy with her new role"; (2) on November 17, 2011, a representative contacted a lawyer for the city, "who indicated he would check into it and get back"; (3) in early February 2012, a Lehigh representative spoke with the tax assessor, who said he was aware of the problem and was "willing to correct it, but that he would need time because he had recently been named the new [a]ssessor and was busy with his new role"; (4) in August 2012, a representative spoke with the tax assessor, who confirmed that he was "familiar with the problem, but said that he had not taken any action to correct it."

These "representations" by the city over a two-year period essentially amount to little more than general statements that it was aware of the problem and working on it. Consequently, we are of the opinion that they are not sufficient to demonstrate that any reliance Lehigh might have had on receiving a refund or credit was reasonable. We conclude that the facts before us are insufficient to toll the three-month limitations period, particularly in light of the General Assembly's carefully crafted statutory scheme to provide for the financial sustenance of Rhode Island's cities and towns. We affirm, therefore, the grant of summary judgment in favor of the city on count 3 of the plaintiff's complaint.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Lehigh Cement Co. v. David Quinn, in his capacity as Tax Assessor of the City of Providence, Rhode Island. |
| **Case Number** | No. 2016-118-Appeal. (PC 12-6580) |
| **Date Opinion Filed** | December 13, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiff: Mark A. Pogue, Esq. |
| | For Defendant: Lisa Fries, Esq. |