Bellevue-Ochre Point Neighborhood     :
Association

v.     :

Preservation Society of Newport County.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Bellevue-Ochre Point Neighborhood　　:
　　　　Association

　　　　　　v.　　　　　　　　:

Preservation Society of Newport County.　　:

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   The plaintiff, Bellevue-Ochre Point Neighborhood Association (BOPNA or plaintiff), appeals from the Superior Court's dismissal of its declaratory judgment action in favor of the defendant, the Preservation Society of Newport County (the society or defendant).  This appeal arises from the society's application for the construction of a Welcome Center (Welcome Center) near the entrance of the Newport mansion, the Breakers. The proposed Welcome Center would be approximately 3,650 square feet and would contain areas for ticket sales, refreshment sales, and restrooms.

BOPNA initiated a declaratory judgment action in the Superior Court, pursuant to the Uniform Declaratory Judgments Act (UDJA), G.L. 1956 chapter 30 of title 9, seeking various declarations that the Welcome Center is prohibited under the City of Newport Zoning Ordinance (the zoning ordinance).  The society moved to dismiss the complaint pursuant to Rule 12(b)(1), (6) of the Superior Court Rules of Civil Procedure and § 9-30-6, and plaintiff objected.

A justice of the Superior Court heard the matter and found for the society.  He concluded that the issues raised in BOPNA's complaint were "within the jurisdiction and authority of the Newport zoning officials to determine * * * and inappropriate for resolution in an action seeking

- 1 -

declaratory judgment." Accordingly, the hearing justice declined BOPNA's request for declaratory judgment and dismissed the action. On September 9, 2014, plaintiff filed the present appeal. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

The Breakers is a well-known mansion in Newport, Rhode Island. Originally the Vanderbilt family's summer cottage, Gladys Vanderbilt opened the extravagant seventy-room mansion to the public in 1948 for the Society to operate as a museum. In 1972, the society purchased the Breakers from Gladys Vanderbilt's heirs. At present, it continues to operate the Breakers as a museum, attracting hundreds of thousands of visitors each year.

When the society first began operating the Breakers as a museum, its use was permitted by right pursuant to the zoning ordinance. In 1977, however, the zoning ordinance was amended to permit museums in the R-60 zone where the Breakers is located through a "special exception" granted by the City of Newport Zoning Board of Review (the zoning board).[1] In 1997, the society applied for a special use permit to construct a twelve-foot-by-twelve-foot shed on the Breakers to house a vending machine for patrons awaiting entrance. The shed was to "be located in existing natural screening and * * * not be visible off the premises." The zoning board granted the special use permit.

In May 2013, the society initiated the administrative process for the construction of the Welcome Center by applying to the Newport Historic District Commission (HDC) for a

---

[1] While the 1977 zoning ordinance used the term "special exception," the current zoning ordinance employs the term "special use permit."

certificate of appropriateness.[2]  After the HDC denied its application, the Society appealed to the zoning board.  In a decision dated March 1, 2014, the zoning board reversed the HDC's decision and found that the proposed Welcome Center complied with Newport's historic zoning provisions.[3]

On March 7, 2014, BOPNA, a nonprofit corporation comprised of property owners and residents in Newport's Bellevue-Ochre Point Neighborhood, brought this declaratory judgment action in the Superior Court.[4]  In its action, BOPNA sought the following declarations:  the Breakers is a lawful nonconforming use, and the Welcome Center's construction would be a prohibited movement or change in the land's nonconforming use; the Welcome Center will house a restaurant, and the zoning ordinance prohibits restaurant operation on museum property; and, lastly, the Welcome Center is an unpermitted accessory use on the Breakers property.

The society moved to dismiss pursuant to Rule 12(b)(1), (6), and § 9-30-6.  In support of its motion, the society argued that "BOPNA's complaint fail[ed] to present a ripe, justiciable claim properly cognizable under the Uniform Declaratory Judgments Act."  The defendant asserted that, under the zoning enabling act, judicial intervention in zoning matters should be

---

[2] Because the Breakers is located within the City of Newport's Historic District, the society had to apply to the HDC for its review and approval of the proposed Welcome Center.

[3] On March 27, 2014, BOPNA appealed the zoning board's decision to the Superior Court and the society moved to dismiss that appeal. Bellevue-Ochre Point Neighborhood Association v. City of Newport Zoning Board, NC 2014-116.  The complaint was dismissed on August 6, 2014.

[4] This Court notes that BOPNA did not join the City of Newport in its action.  Pursuant to G.L. 1956 § 9-30-11:

> "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

reserved until the local zoning process is finished. It argued that the Superior Court's jurisdiction is "appellate in nature" and "designed to adjudicate whether or not the [z]oning [b]oard exceeded its legislative authority." Additionally, the society argued that BOPNA lacked standing under the UDJA because it did not suffer an injury entitling it to relief. Rather, "[BOPNA] place[d] the 'cart' well before the 'horse'" by "speculat[ing] and assum[ing] that the [z]oning [b]oard" will not consider their concerns about the Welcome Center. BOPNA opposed the motion, arguing that its complaint presented "a justiciable controversy ripe for judicial determination." It further asserted that a civil action in the Superior Court was "the only avenue" to resolve the issues raised in its complaint.

A justice of the Superior Court heard the parties on the society's motion to dismiss on June 2, 2014, and, on July 18, 2014, he granted the motion.[5] In his written decision, the hearing justice found it unnecessary to address the issue of BOPNA's standing because he determined that the issues raised in its complaint were inappropriate for a declaratory judgment action, as the zoning board could and should resolve them.

The hearing justice also discussed BOPNA's failure to exhaust its administrative remedies. He noted the exceptions to the doctrine of exhaustion of administrative remedies: when a complaint seeks a declaration that an ordinance or rule is unconstitutional or exceeds statutory powers or that the agency lacks jurisdiction. The hearing justice concluded that neither of the exceptions applied because the zoning board possessed the jurisdiction to determine the complaint's issues. He noted that both the Zoning Enabling Act, G.L. 1956 § 45-24-57, and the zoning ordinance grant local zoning officials the authority to interpret zoning ordinances, and, therefore, BOPNA's claims seeking interpretations of the zoning ordinance fell squarely within

---

[5] On August 25, 2014, the decision was amended.

- 4 -

the zoning board's authority. The hearing justice found that "[a]ll the declarations that BOPNA requests this [c]ourt to make are part and parcel of an everyday review of a building application by municipal zoning officials: in the first instance by the zoning officer, then on review by the [z]oning [b]oard." Accordingly, he declined BOPNA's request for declaratory judgment and granted the society's motion to dismiss. On September 9, 2014, BOPNA filed this appeal.

While this appeal was pending, the society filed an application with the zoning board for a modification of its 1997 special use permit. After conducting evidentiary hearings and considering testimony, exhibits, arguments, and written submissions, the zoning board issued a written decision granting the society's special use permit application. The zoning board discussed the seven factors[6] it considered in reaching its decision, and ultimately concluded that the Welcome Center was "in accord with the public convenience and welfare."

In its decision, the zoning board also addressed—and rejected—many of the arguments raised in BOPNA's complaint. It rejected BOPNA's contention that the Breakers is a nonconforming use that cannot be altered or moved, noting that the Breakers was granted a special use permit in 1997 and, thus, is not a nonconforming use. It addressed BOPNA's argument that the zoning ordinance prohibited "restaurants" in the R-60 district, noting that neither the Breakers nor the Welcome Center would be "an establishment whose principal business is the sale of foods." Rather, "[t]he refreshment service aspect is, by all metrics, not the principal activity of the [W]elcome [C]enter." Specifically, the zoning board noted that the

---

[6] The factors include: "the nature of the proposed site, including its size and shape and the proposed size, shape, and arrangement of the proposed structure"; "the resulting traffic patterns and adequacy of proposed off street parking and loading"; "the nature of the surrounding area and the extent to which the proposed use or feature will be in harmony with the surrounding area"; "the proximity of dwellings, churches, schools, public buildings and other places of public gathering"; "the fire hazard resulting from the nature of the proposed buildings and uses and the proximity of existing buildings and uses"; "all standards contained in this Zoning Code"; and "the comprehensive plan for the City."

Welcome Center would sell only prepackaged items, would not serve alcohol, and would not contain a kitchen, food preparation facilities, a stove, a microwave, or a dishwasher. Additionally, it would sell refreshments only to ticketed guests during normal museum hours and would not have special events, functions, live music, or entertainment. Further, the Welcome Center would be "concealed in a grove of trees and will not be seen – or heard – from Ochre Point Avenue or any surrounding properties." Accordingly, the zoning board granted the society's special use permit application.[7]

On appeal, BOPNA argues that the hearing justice was required to hear and decide its request for declaratory judgment because an interpretation of the zoning ordinance is "to be determined exclusively by the courts." BOPNA also argues that the doctrine of exhaustion of administrative remedies does not apply. Lastly, BOPNA asks this Court to "go beyond the immediate issues of the [S]uperior [C]ourt's error in dismissing BOPNA's complaint, and determine the underlying issues of the interpretation of the Ordinance." Specifically, it asks us to determine whether the zoning ordinance prohibits the Welcome Center because: the Breakers is a nonconforming use within the R-60 zone and construction of the Welcome Center would constitute a prohibited movement or change in a non-confirming use; the Welcome Center would house a restaurant that the zoning ordinance prohibits on museum property; and the Welcome Center is a prohibited accessory use under the zoning ordinance.

---

[7] BOPNA, as one of the named plaintiffs, appealed the zoning board's decision to the Superior Court, Kahn v. Kirwin, CA No. NC 2015-56, but it was dismissed for lack of standing under the zoning ordinance and zoning enabling act. BOPNA's petition for a writ of certiorari before this Court, Kahn v. Kirwin, No. 2016-16-N.P., is pending.

## II

## Standard of Review

At the outset, we note that the parties dispute the applicable standard of review. BOPNA argues that the hearing justice "dismissed BOPNA's complaint based on exhaustion of administrative remedies," under Rule 12(b)(6). Accordingly, it asserts that "we apply the same standard as the hearing justice" in reviewing the Rule 12(b)(6) dismissal. Tri-Town Construction Co. v. Commerce Park Associates 12, LLC, 139 A.3d 467, 478 (R.I. 2016). BOPNA cites to Tucker Estates Charlestown, LLC v. Town of Charlestown, 964 A.2d 1138, 1140 (R.I. 2009) (Tucker Estates), for the proposition that "dismissal of a declaratory-judgment action before a hearing on the merits, under Rule 12(b)(6), is proper only when the pleadings demonstrate that, beyond a reasonable doubt, the declaration prayed for is an impossibility."

The society contends that a hearing justice's decision "to decline to issue a declaratory judgment is reviewed based on the abuse of discretion standard." It also argues, however, that the hearing justice's consideration of substantial materials outside of the complaint's four corners converted the motion to dismiss to a summary judgment motion. The defendant argues that the hearing justice "reached the essential merits of the case in a manner tantamount to summary judgment." Therefore, the society submits that we should review the converted motion for summary judgment de novo. Multi-State Restoration, Inc. v. DWS Properties, LLC, 61 A.3d 414, 417 (R.I. 2013).

## Discussion

### A

### Proper Standard of Review

We will first resolve the issue of the standard of review before conducting our analysis. "[W]hen ruling on a motion to dismiss, if 'matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 [of the Superior Court Rules of Civil Procedure] * * * .'" Multi-State Restoration, Inc., 61 A.3d at 417 (quoting Rule 12(b)(6)). We have held that "when the motion justice receives evidentiary matters outside the complaint and does not expressly exclude them in passing on the motion, then Rule 12(b)(6) specifically requires the motion to be considered as one for summary judgment." Martin v. Howard, 784 A.2d 291, 298 (R.I. 2001). BOPNA, in urging us to treat the matter under Rule 12(b)(6), relies on Tucker Estates. In Tucker Estates, this Court vacated a Rule 12(b)(6) dismissal of the plaintiff's declaratory judgment action, after the hearing justice concluded that it was time-barred. Tucker Estates, 964 A.2d at 1139. We held that a Rule 12(b)(6) dismissal of a declaratory judgment action, before a hearing on the merits, is improper unless the pleadings show that the requested declaration is impossible.

On review of the hearing justice's written decision, it is clear that he considered outside materials, as he cited to and discussed the 1977 City of Newport Zoning Ordinance, the current City of Newport Zoning Ordinance (1994), and the application and decision on the 1997 special use permit.[8] Therefore, this case differs from the dismissal in Tucker Estates—here, the hearing

---

[8] Despite BOPNA's contention that the motion to dismiss was not converted to a motion for summary judgment, we were not provided with a transcript of the June 2, 2014 hearing with which we could analyze the colloquy that occurred. "The decision to pursue an appeal without

justice issued a thorough decision that considered the issues raised in plaintiff's complaint, while looking to "matters outside the pleading." Rule 12(b)(6). As such, we conclude that the society's motion to dismiss was converted to a motion for summary judgment.

We review a motion for summary judgment <u>de</u> <u>novo</u>. "We will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." <u>Newstone Development, LLC v. East Pacific, LLC</u>, 140 A.3d 100, 103 (R.I. 2016) (quoting <u>Daniels v. Fluette</u>, 64 A.3d 302, 304 (R.I. 2013)). Further, "the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." <u>Id.</u> (quoting <u>Daniels</u>, 64 A.3d at 304).

**B**

**The Zoning Board's Authority**

BOPNA also argues that the hearing justice was required to hear and decide its declaratory judgment action. The plaintiff contends that the issues raised in its complaint are questions of law that only the courts can determine, asserting that the zoning board lacks the authority to interpret the zoning ordinance. Accordingly, the crux of the issue before the hearing justice was whether the zoning board had the authority to decide the issues raised in BOPNA's complaint.

"[Z]oning boards are statutory bodies whose powers are legislatively delineated." <u>Duffy v. Milder</u>, 896 A.2d 27, 36 (R.I. 2006). Under the zoning enabling act:

---

ordering the full transcript of the Superior Court proceeding is 'risky business.'" <u>Holden v. Salvadore</u>, 964 A.2d 508, 513 (R.I. 2009) (quoting <u>731 Airport Associates, LP v. H & M Realty Associates, LLC</u>, 799 A.2d 279, 282 (R.I. 2002)).

"A zoning ordinance adopted pursuant to this chapter shall provide that the zoning board of review shall:
"(1) Have the following powers and duties:
"(i) To hear and decide appeals * * * where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative officer or agency <u>in the enforcement or interpretation of this chapter, or of any ordinance adopted pursuant hereto</u> * * * ." Section 45-24-57 (emphasis added).

Pursuant to the Newport Zoning Code, "It is the intent of this zoning code that <u>all matters arising in connection with the enforcement or interpretation of this zoning code</u>, * * * shall be first presented to the zoning officer; and * * * shall be presented to the zoning board of review only on appeal * * * ." Newport Zoning Ordinance § 17.112.010(A) (emphasis added). As the foregoing language clearly states, the zoning board possesses the authority to interpret zoning ordinances.

BOPNA cites to <u>RICO Corp. v. Town of Exeter</u>, 787 A.2d 1136 (R.I. 2001) and <u>Olean v. Zoning Board of Review of Lincoln</u>, 101 R.I. 50, 220 A.2d 177 (1966), to support its proposition that the zoning board's "authority does not extend to issuance of declaratory judgments or interpretation of zoning ordinances" because "[s]uch determinations present questions of law."[9] Neither case, however, supports its assertion that the zoning board lacks authority to interpret the zoning ordinance. In <u>Olean</u>, a local zoning board upheld the denial of the property owner's application because the property's use was never established as legal. Rather than appeal the board's decision to the Superior Court, the property owners applied to the local zoning board "for a pronouncement that the use was legally established and that the premises could continue to

_____

[9] BOPNA also cites to <u>Campbell v. Tiverton Zoning Board</u>, 15 A.3d 1015 (R.I. 2011), to support its argument that "[its] complaint is well within the [S]uperior [C]ourt's purview under the UDJA." Its reliance on <u>Campbell</u>, however, is inapposite here. In <u>Campbell</u>, this Court did not address the Superior Court's or the local zoning board's authority to issue declaratory judgments.

- 10 -

be used as they had been * * * ." Olean, 101 R.I. at 51, 220 A.2d at 178.  This Court held that

"the respondent board by purporting to confirm the legality of a pre-existing use in substance

assumed to itself the power to issue declaratory judgments.  This it had no right to do."  Id. at 52,

220 A.2d at 178.

Similarly, in RICO, this Court held that the local zoning board lacked jurisdiction to find

the property's use a legal pre-existing nonconforming use.  RICO, 787 A.2d at 1143.  We cited

to Olean in holding that the board lacked subject matter jurisdiction, noting:

> "Zoning boards are statutory bodies.  Their powers are legislatively
> delineated.  They are empowered to hear appeals from the
> determinations of administrative officers made in the enforcement
> of the zoning laws and in addition they may authorize deviations
> from the comprehensive plan by granting exceptions to or
> variations in the application of the terms of local zoning
> ordinances."  Id. at 1144 (quoting Olean, 101 R.I. at 52, 220 A.2d
> at 178).

The particular factual scenarios at play in Olean and RICO are not analogous to this

case.[10]   In both, this Court held that the local zoning boards lacked the authority to issue

declaratory judgments regarding the pre-existing use of property—not the authority to interpret

zoning ordinances.  See also Duffy, 896 A.2d at 36 (noting that zoning boards "do not have the

authority to confirm the legality of a pre[-]existing use").  Here, had BOPNA proceeded through

with the administrative processes, the zoning board would not be faced with making a

declaration regarding the legality of the Breakers' pre-existing use.  Rather, the zoning board

would have to (and eventually did) interpret the zoning ordinance's provisions, review the

society's application, and ultimately determine whether to grant a special use permit.

---

[10] This Court notes that the zoning board, in its decision, also found Olean and RICO
inapplicable because "they involved prohibited uses – as opposed to uses allowable (and
modifiable) by special use permit."

We are satisfied that the hearing justice properly determined that the zoning board had the authority to decide the issues raised in BOPNA's complaint, and, therefore, he was not "obligated to hear and decide" its declaratory judgment action. Accordingly, the hearing justice correctly found that "[t]his is clearly a task more appropriate for the local zoning officials."

## C

### Exhaustion of Administrative Remedies

BOPNA also argues that the hearing justice erred in applying the doctrine of exhaustion of administrative remedies. First, BOPNA argues that its challenge to the zoning board's jurisdiction to interpret the zoning ordinance falls under one of the doctrine's exceptions. Second, BOPNA argues that exhausting administrative remedies would be futile because it does not have an available administrative remedy to exhaust.

"It is well settled that a plaintiff aggrieved by a state agency's action first must exhaust administrative remedies before bringing a claim in court." Richardson v. Rhode Island Department of Education, 947 A.2d 253, 259 (R.I. 2008) (quoting Arnold v. Lebel, 941 A.2d 813, 818 (R.I. 2007)). The doctrine "aids judicial review by allowing the parties and the agency to develop the facts of the case, and * * * promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, perhaps avoiding the necessity of any judicial involvement." Doe ex rel. His Parents and Natural Guardians v. East Greenwich School Department, 899 A.2d 1258, 1266 (R.I. 2006) (quoting Almeida v. Plasters' and Cement Masons' Local 40 Pension Fund, 722 A.2d 257, 259 (R.I. 1998)). However, "we have recognized that a party is not precluded from proceeding under the UDJA, particularly when 'the complaint seeks a declaration that the challenged ordinance or rule is facially unconstitutional or

- 12 -

in excess of statutory powers, or that the agency or board had no jurisdiction.'" Tucker Estates, 964 A.2d at 1140 (quoting Kingsley v. Miller, 120 R.I. 372, 374, 388 A.2d 357, 359 (1978)).

The hearing justice noted the above-mentioned exceptions to the doctrine and found that BOPNA's complaint did not fall under them. Although plaintiff asserted that the zoning board lacked jurisdiction to determine the issues raised in its complaint, the hearing justice found that it had the requisite authority, and consequently, that exception did not apply. The hearing justice found that if he entertained BOPNA's action:

> "the four purposes of the exhaustion of remedies doctrine * * * would be thwarted: the frequent and deliberate flouting of the administrative process would not be discouraged; the agency would be denied the opportunity to apply its expertise and exercise its discretion; further judicial review would be compromised by the inability of the parties and the agency to fully develop the pertinent facts and record; and, the judicial economy would not be served."

As we have concluded above, the zoning board has the authority to interpret zoning ordinances, and, thus, BOPNA's complaint does not fall under the doctrine's exception for challenges to a board's jurisdiction.

BOPNA also asserts that the doctrine of exhaustion of administrative remedies does not apply because its application would be futile. Specifically, BOPNA references the case arising from its appeal of the zoning board's decision: Kahn v. Kirwin, CA No. NC 2015-56. In Kahn, a hearing justice dismissed BOPNA's action because it lacked standing to appeal.[11] BOPNA argues that exhaustion of administrative remedies would be futile because, with this recent dismissal, it has no administrative remedies to exhaust.

This Court recognizes "an exception to the exhaustion requirement when exhaustion of administrative remedies would be futile." DeLuca v. City of Cranston, 22 A.3d 382, 385 (R.I.

---

[11] In that case, the hearing justice concluded that BOPNA lacked standing as an "aggrieved party."

- 13 -

2011) (mem.) (quoting Richardson, 947 A.2d at 259). This case, however, differs from other zoning cases where futility exempted a party from the doctrine. For example, in Frank Ansuini, Inc. v. City of Cranston, 107 R.I. 63, 73, 264 A.2d 910, 915 (1970), this Court held that the plaintiff was not required to exhaust administrative remedies because "it would have been futile * * * to have appealed to the board of review, since that agency lacked authority to declare as being a nullity a provision of the regulation * * * ." Similarly, in M.B.T. Construction Corp. v. Edwards, 528 A.2d 336, 337-38 (R.I. 1987), we held that the plaintiff was not required to exhaust administrative remedies because it sought a ruling on the validity and enforceability of a zoning code. This Court concluded that exhaustion of administrative remedies would be futile because the board of review did "not have the authority to consider that question." Id. at 338.

Here, unlike in Frank Ansuini, Inc. and M.B.T. Construction Corp., exhausting administrative remedies was not futile because, at the time of the hearing justice's decision in this case, the zoning board had the authority to consider the issues raised in BOPNA's complaint. The zoning board had not yet rendered a decision on the proposed Welcome Center; and, at that time, BOPNA had a mechanism, through the zoning board, to pursue the issues asserted in its complaint. Importantly, BOPNA did in fact utilize the available administrative remedies by participating in the proceedings before the zoning board and appealing its decision to the Superior Court in Kahn. Accordingly, we conclude that the hearing justice properly found that BOPNA failed to exhaust administrative remedies because neither its challenge to the zoning board's jurisdiction or its assertion of futility applied.

**D**

**BOPNA's Request for an Interpretation of the Zoning Ordinance**

Finally, BOPNA asks this Court to "go beyond the immediate issues of the [S]uperior [C]ourt's error in dismissing BOPNA's complaint, and determine the underlying issues of the interpretation of the Ordinance." In light of our conclusion that the hearing justice's determination was proper, however, we decline BOPNA's request to decide the issues concerning the zoning ordinance's interpretation. As the hearing justice correctly determined, the issues presented in BOPNA's complaint are within the zoning board's jurisdiction and authority and therefore are "inappropriate for resolution in an action seeking declaratory judgment."

**IV**

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   Bellevue-Ochre Point Neighborhood Association v. Preservation Society of Newport County.

**CASE NO:**   No. 2015-241-Appeal.
(NC 14-98)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   January 9, 2017

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiff:   R. Daniel Prentiss, Esq.

For Defendant:   William R. Landry, Esq.
Matthew H. Leys, Esq.